UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TANYA WEYKER,

        Plaintiff,

Case No. 14-cv-782-pp

v.

DEPUTY JOSEPH QUILES, et al.,

        Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS (DKT. NO. 25)**

This case is before the court on plaintiff Tanya Weyker's petition for attorneys' fees and costs pursuant to 42 U.S.C. §1988. For the reasons stated below, the court grants in part and denies in part the petition.

**I.    FEES INCURRED BY WEYKER'S ORIGINAL COUNSEL, ERICKSON & OPPENHEIMER**

At the outset, the court notes that Erickson & Oppenhemier has corrected the discrepancy between the numbers of hours for which the firm requested compensation in its fee petition (see Dkt. No. 28-2 at 23-29) compared to the number of hours for which it requested compensation in its response brief in support of that petition (see Dkt. No. 31 at 6). The fee petition sought compensation for 110.75 hours, while the response brief sought compensation for only 74.75 hours (the number of hours billed by Ms. Maisuria, omitting the additional 25.25 hours billed by Mr. Erickson and the

1

10.75 hours billed by Mr. Oppenheimer). See Dkt. No. 28-2 at 23-29. In a post-hearing brief, the firm confirmed that it is seeking compensation for 110.75 hours of attorney time, amounting to $45,962.50. Dkt. No. 34.

The defendants argue that Erickson & Oppenheimer's $45,962.50 in requested fees is excessive, because Erickson & Oppenheimer used quarter-hour billing and its hourly rates were based on Chicago-area rates, not Milwaukee-area rates. The defendants also argue that the court should exclude certain fees and costs related to administrative matters.

**A.  Erickson & Oppenheimer's Requested Hourly Rates Are Not Excessive**

"Fee-shifting statutes in civil rights legislation are intended to allow litigants access to attorneys who would otherwise be inaccessible, given the low retainers many plaintiffs can afford." Mathur v. Bd. of Trs. of S. Ill. Univ., 317 F.3d 738, 743 (7th Cir. 2003) (citing City of Riverside v. Rivera, 477 U.S. 561, 576, 106 S. Ct. 2686 (1986). For that reason, courts prefer to "compensate attorneys for the amount that they would have earned from paying clients, *i.e.*, the standard hourly rate." Id.

The court presumes that an attorney's "actual billing rate for similar litigation is appropriate to use as the market rate." Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 640 (7th Cir. 2011). The "next best evidence" of a reasonable market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee

awards the attorney has received in similar cases." Id. (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999)).

The party seeking fees bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." Id. (quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11, 104 S. Ct. 1541 (1984)). Once the fee applicant satisfies this burden, the other party must provide "a good reason why a lower rate is essential." Id. (quoting People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1313 (7th Cir. 1996)).

"An attorney may charge higher than the community's average if she possesses an unusual amount of skill, the ability to [empathize] with the jury, investigative abilities, or other qualities which command a premium. However, if the district court decides that the proffered rate overstates the value of an attorney's services, it may lower them accordingly. Mathur, 317 F.3d at 743 (citing Chrapliwy v. Uniroyal, Inc., 670 F.2d 760, 767 (7th Cir. 1982) ("A judge may well approach high rates with skepticism, and he may exercise some discretion in lowering such rates. For example, an attorney may be overqualified . . . or an attorney may bill at a high rate but rarely collect at that rate.").

An attorney's reasonable hourly rate is "derived from the market rate for the services rendered." Pickett, 664 F.3d at 640 (quoting Denius v. Dunlap, 330 F.3d 919, 930 (7th Cir. 2003)). If an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town

3

attorney's rate when calculating the lodestar amount, though if "local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service." Chrapliwy, 670 F.2d at 768.

The Seventh Circuit has "consistently recognized that an attorney's actual billing rate for comparable work is presumptively appropriate for use as a market rate when making a lodestar calculation." Jeffboat LLC v. Dir., Office of Workers' Comp. Programs, 553 F.3d 487, 490 (7th Cir. 2009) (citing Spegon, 175 F.3d at 555). The Jeffboat opinion explains that, while the Mathur court held that " 'if an out of town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount,' "it also noted that the district judge had discretion to "adjust an out-of-town attorney's rate downward when calculating the lodestar amount if local counsel could have provided comparably effective legal services and the rate of the out-of-town practitioner was higher than the local market rate." Id.

In this case, Erickson & Oppenheimer petitioned the court to award attorneys' fees based on an hourly rate of $550 per hour for attorneys Erickson and Oppenheimer, and $375 per hour for attorney Maisuria. The defendants argue that the claimed rates are excessive because they are based on Chicago-area rates, not the prevailing rates of civil rights practitioners in the Milwaukee area. Based on the case law discussed above, the court finds that Erickson &

4

Oppenheimer has adequately established the market rates of the attorneys involved in this case, and they are not excessive.

Because the Erickson & Oppenheimer firm is located in Chicago, the court should defer to their Chicago-area rates under Jeffboat. The court determines that Erickson & Oppenheimer has provided ample evidence of its actual billing rates and market rates, including affidavits from each of the attorneys involved in Weyker's case and several contingency fee agreements in which clients have agreed to pay $550 per hour for attorneys Erickson's and Oppenheimer's legal services (though it is not clear whether they have actually collected that sum).

In further support of Mr. Erickson's and Mr. Oppenheimer's hourly rate, Erickson & Oppenheimer cited a federal civil rights case in which the "City of Chicago did not object to Mr. Erickson's and Mr. Oppenheimer's hourly rate of $500 per hour," contained in a 2014 fee petition and relating to time billed in 2012. Cooper v. Dailey, No. 07-cv-2144, Dkt. No. 379-1 at 59-99 (N.D. Ill.). To support Ms. Maisuria's hourly rate, Erickson & Oppenheimer cited a federal civil rights case in the Northern District of Illinois in which Ms. Maisuria was awarded fees in 2011 based on an hourly rate of $300. Carrel v. Sisk, No. 09-cv-844, Dkt. Nos. 111, 113 (N.D. Ill.). The court further recognizes that Mr. Erickson and Mr. Oppenheimer each have 25 years of litigation experience and have substantial experience litigating criminal and civil rights cases, while Ms. Maisuria has nine years of litigation experience, and has specialized in civil rights litigation for much of that time.

5

When considering the passage of time since those rates were awarded, the court finds an increase of $50 per hour for Mr. Erickson and Mr. Oppenheimer, and $75 per hour for Ms. Maisuria, is not unreasonable. See Fox v. Barnes, No. 09-cv-5453, 2014 WL 4401802, at *3 (N.D. Ill. Aug. 15, 2013) (Holderman, J.)( "hourly fees often increase over time, both because of inflation and because of the increasing skill and reputation of the attorney, suggesting that rates higher than those awarded three years ago are appropriate.").

Accordingly, the court finds that Erickson & Oppenheimer has met its burden of demonstrating that its requested hourly rates are not excessive.

**B.  A 5% Reduction in Erickson & Oppenheimer's Time Reasonably Accounts for Potential Time Inflation Based on Quarter-Hour Billing**

The defendants challenge Erickson & Oppenheimer's use of quarter-hour billing, arguing that use of quarter-hour increments, as opposed to tenth-hour increments, unreasonably inflates attorney time. Erickson & Oppenheimer responds that quarter-hour billing is not per se unreasonable, and that it routinely bills in quarter-hour increments.

The defendants rely heavily on LaSalvia v. City of Evanston, No. 10-C-3076, 2012 WL 2502703 (N.D. Ill., June 28, 2012). That court held that "[q]uarter-hour billing is not per se unreasonable, but may be unreasonable under the facts and circumstances of a given case." Id. at 3 (internal citations omitted). In that case, an attorney's billing records contained "163 separate entries, 91 of which are for .25 hours, often on account of phone calls or e-mails." Id. The court explained that nine minutes is the greatest amount of

6

time that quarter-hour billing can inflate attorney time over the use of tenth-hour billing, which can inflate a bill by a maximum of only five minutes. Using that calculation, the court found that "the greatest possible amount by which the quarter-hour convention inflated [the billing attorney's] time is 24.45 hours (163 entries multiple by 9 minutes per entry), 8.4% of the 290 total hours that Plaintiff claims for [the attorney]." Id. The court recognized, however, "that not each of these .25 entries inflate[d] [the attorney's] time by 9 minutes," and exercised "its discretion to reduce [the attorney's] time by 5% on account of his use of quarter-hour billing." Id. (citing Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir. 2000).

The time entries in this case are similar to those at issue in LaSalvia. Here, the defendants argue that "Erickson & Oppenheimer's billing records contain 166 separate entries, 90 of which are for .25 hours, often for reviewing or drafting emails or phone calls." Dkt. No. 27 at 5. The number of entries at issue in this case is almost identical to the number at issue in LaSalvia. LaSalvia, 2012 WL 2502703, at *3 (163 separate entries, 91 of which were for .25 hours). For reasons that were not explained in their brief, the defendants ask the court "to reduce Erickson & Oppenheimer's time by 20% on account of its use of quarter-hour billing," even though the LaSalvia court reduced the attorney's time by only 5%. Erickson & Oppenheimer responds that such a reduction is "extreme."

The court finds the defendants' requested 20% reduction is excessive, and likely overstates the amount of time inflation that might have occurred in

7

this case. Using the LaSalvia court's method of calculation (which, admittedly, was art, not science), the court finds that if each of Erickson & Oppenheimer's 166 time entries inflated its time by nine minutes, the total increase would be 24.9 hours, or 22.5% of the firm's total billed time of 110.75 hours. A 20% reduction of the firm's total billed time eliminates 22.15 hours. So, by asking for a 20% reduction in Erickson & Oppenheimer's total billed time, the defendants effectively are asking the court to conclude that almost all of Erickson & Oppenheimer's time entries overstate the attorney's actual time by nine minutes. As the LaSalvia court noted, this is statistically unlikely to be the case.

The defendants' request lacks any justification in the record.[1] The court finds that the proposed 20% reduction is too great, and adopts instead the LaSalvia court's rough cut of a 5% reduction of Erickson & Oppenheimer's fees. The court concludes that a 5% reduction reasonably accounts for potential time inflation due to quarter-hour billing.

---

[1] At the hearing on the fee petition, the defendants argued that the proposed 20% reduction was warranted due to a higher proportion of .25 hour entries in this case versus LaSalvia. The court disagrees with that analysis. In this case, as the defendants themselves argued in their brief, "Erickson & Oppenheimer's billing records contain 166 separate entries, 90 of which are for .25 hours . . . ." Dkt. No. 27 at 5. In LaSalvia, the plaintiff's billing records contained "163 separate entries, 91 of which are for .25 hours." LaSalvia, 2012 WL 2502703, at *3. The amount of total entries and quarter-hour entries in this case is virtually identical to LaSalvia, and the court finds no basis for the defendants' request to eliminate 20% of Erickson & Oppenheimer's total billed time due to its use of quarter-hour billing.

8

Case 2:14-cv-00782-PP   Filed 09/04/15   Page 8 of 18   Document 36

**C.  The Court Excludes 2.25 Hours Billed by Mr. Erickson After the Date the Plaintiff Accepted the Defendants' Rule 68 Offer of Judgment**

Mr. Erickson's billing records reflect that on March 3, 2015 and March 13, 2015, he spent a total of 2.25 hours in connection with the plaintiff's fee petition. Dkt. No. 28-2 at 24. But by that time, the plaintiff had accepted the defendants' February 19, 2015 Rule 68 offer of judgment. The plaintiff's notice of acceptance of the offer, filed on the court's docket, is dated February 26, 2015. Dkt. No. 28-1 at 1. Fed. R. Civ. P. 68(a) allows a defendant to serve "an offer to allow judgment on specified terms, with the costs then accrued." Further, the language of the settlement offer itself states that the plaintiff could have a judgment against the defendants, plus costs, "said costs to include reasonable attorneys fees *incurred to date as allowed under 42 U.S.C. §1988 . . . .*" Id. at 2 (emphasis added). Both Rule 68 and the Rule 68 agreement make clear that the plaintiff was entitled to attorneys' fees through the date of the offer; the 2.25 hours Mr. Erickson put in on March 3 and 13 occurred after that date. The court will reduce the award of fees by those 2.25 hours.

**D.  Erickson & Oppenheimer Withdrew its Requests for Administrative Fees and Costs Related to Admission to the Eastern District of Wisconsin**

Erickson & Oppenheimer has withdrawn its request for $356.25 in attorneys' fees related to 4.75 hours spent completing administrative tasks, and $687.00 of costs associated with admission to the Eastern District of Wisconsin. Dkt. No. 31 at 5. Taking into account those reductions, Erickson &

9

Oppenheimer requests $447.99 in administrative costs, which the defendants do not oppose. Dkt. No. 29 at 2.

**E.  Lodestar Calculation**

Based on the discussion above, the court arrives at the following lodestar calculation with regard to Erickson & Oppenheimer's fee petition.

| Attorney or Timekeeper | Requested Hours | Reductions | | | | Awarded Hours | Awarded Rate/Hour Or Costs | Lodestar Amount |
|---|---|---|---|---|---|---|---|---|
| | | Rule 68(a) | 1/4 Hour Billing | Admin. Tasks | Bar Admission Costs | | | |
| **Erickson** | 25.25 | 2.25 | 1.25 | — | — | 21.75 | $550.00 | $11,962.50 |
| **Oppenheimer** | 10.75 | — | 0.50 | — | — | 10.25 | $550.00 | $5,637.50 |
| **Maisuria** | 74.75 | — | 3.75 | — | — | 71.00 | $375.00 | $26,625.00 |
| **Administrative** | 4.75 | | | 4.75 | $687.00 | 0 | $447.99 | $447.99 |
| **TOTAL** | | | | | | | | $44,672.99 |

The court exercises its discretion to grant Weyker's motion for attorneys' fees in the amount of $44,672.99 as to work performed by Erickson & Oppenheimer, which the court determines is a reasonable amount under the circumstances of this case, and to deny the motion as to any amount in excess of $44,672.99.

**II.  FEES INCURRED BY WEYKER'S SUCCESSOR COUNSEL, MARTIN LAW OFFICE**

The defendants ask the court to exclude a significant amount of time billed by Weyker's successor counsel, Martin Law Office, as duplicative of work already performed by Erickson & Oppenheimer, unnecessary in light of the

10

settlement negotiations that were underway at the time Weyker discharged Erickson & Oppenheimer, or unrecoverable under Fed. R. Civ. P. 68(a) because the work was performed after Weyker accepted the defendants' Rule 68 offer of judgment.

### A. The Court Excludes 40.5 Hours of Time Billed by Martin Law Office as Duplicative of Work Performed by Erickson & Oppenheimer

After taking over Weyker's representation in mid-December 2014, the Martin Law Office billed over 110 hours through March 5, 2015. Dkt. No. 28-2 at 47-50. Martin Law Office's billing records show that its attorneys and professional staff spent a substantial amount of reviewing the file, including the pleadings, deposition transcripts, and other discovery materials. Id. The defendants argue that the court should exclude 79.6 hours (comprised of 58.4 hours of duplicative time and 15.2 hours of time incurred after the date of the defendants' Rule 68 offer of judgment) billed by Martin Law Office.

Weyker contends that Martin Law Office had an ethical duty to learn the facts of her case and conduct research quickly in order to "competently analyze" her claims. Dkt. No. 26 at 21. She concedes that Martin Law Office's "ethical duty necessitated the duplication of some of the work conducted by Erickson & Oppenheimer." Id. Weyker posits, however, that the court should not reduce Martin Law Office's fees, because a reasonable client would expect her new lawyer "to abide by their ethical duties of competence and diligence" and to do so under the circumstances would result in a considerable investment of time and money. Dkt. No. 26 at 21-22.

11

A federal district court in Massachusetts recently decided that courts "may reduce attorneys' fees based on duplication of effort or unreasonable expenditure of time." Roggio v. Grasmuck 18 F. Supp. 3d 49, 57 (D. Mass. 2014) (a civil action involving violations of the Massachusetts Criminal Offender Record Information). Although the circumstances in Roggio that led the plaintiff to change counsel are not clear, that court concluded that "[a]ny duplication of effort by plaintiff's attorneys after he switched legal teams should not be awarded as attorneys' fees. Id.

A court in the Southern District of New York reached the same conclusion in an employment discrimination case in which the plaintiff prevailed. Watson v. E.S. Sutton, Inc., No. 02 Civ. 02739(KMW), 2006 WL 6570643, *7 (S.D.N.Y. Aug. 11, 2006) ("Fees for services rendered by successive attorneys may be reimbursed under the fee-shifting statute so long as the fees do not reflect duplicative or otherwise unreasonable work.") (quoting Paulino v. Upper W. Side Parking Garage, Inc., No. 96 Civ. 4910(MGC), 1999 WL 325363, at *3 (S.D.N.Y. May 20, 1999). "However, where a plaintiff has made a decision to replace counsel during the course of a litigation, courts in this district have reduced the amount of attorneys' fees recovered where the replacement caused unnecessary duplication of efforts." Id. (citing Annis v. Cnty. of Westchester, 939 F. Supp. 1115, 1123 (S.D.N.Y.1996)).

The Supreme Court held in 2011 that "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use

12

Case 2:14-cv-00782-PP   Filed 09/04/15   Page 12 of 18   Document 36

A federal district court in Massachusetts recently decided that courts "may reduce attorneys' fees based on duplication of effort or unreasonable expenditure of time." Roggio v. Grasmuck 18 F. Supp. 3d 49, 57 (D. Mass. 2014) (a civil action involving violations of the Massachusetts Criminal Offender Record Information). Although the circumstances in Roggio that led the plaintiff to change counsel are not clear, that court concluded that "[a]ny duplication of effort by plaintiff's attorneys after he switched legal teams should not be awarded as attorneys' fees. Id.

A court in the Southern District of New York reached the same conclusion in an employment discrimination case in which the plaintiff prevailed. Watson v. E.S. Sutton, Inc., No. 02 Civ. 02739(KMW), 2006 WL 6570643, *7 (S.D.N.Y. Aug. 11, 2006) ("Fees for services rendered by successive attorneys may be reimbursed under the fee-shifting statute so long as the fees do not reflect duplicative or otherwise unreasonable work.") (quoting Paulino v. Upper W. Side Parking Garage, Inc., No. 96 Civ. 4910(MGC), 1999 WL 325363, at *3 (S.D.N.Y. May 20, 1999). "However, where a plaintiff has made a decision to replace counsel during the course of a litigation, courts in this district have reduced the amount of attorneys' fees recovered where the replacement caused unnecessary duplication of efforts." Id. (citing Annis v. Cnty. of Westchester, 939 F. Supp. 1115, 1123 (S.D.N.Y.1996)).

The Supreme Court held in 2011 that "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use

estimates in calculating and allocating an attorney's time." Fox v. Vice, 131 S. Ct. 2205, 2216 (2011).

The court agrees that Martin Law Office had an ethical duty to represent Weyker competently. Part of that duty was becoming acquainted with her case by reviewing the file to learn the history of the litigation, and Martin Law Office can recover a reasonable amount of fees for that purpose. The court finds, however, that a portion of Martin Law Office's fees is not reasonable to charge to the defendants. Many of the firm's billing entries—representing a substantial amount of the firm's total hours—relate to time spent reviewing what Erickson & Oppenheimer already had done.

Based on Martin Law Office's (at times) vague time descriptions, it is difficult for the court to precisely parse the amount of time that Martin Law Office spent reviewing Weyker's file versus conducting new work. Nonetheless, it is clear that Martin Law Office spent a lot of time reviewing the file during the month of January 2014, and the court agrees with the defendants that Martin Law Office's fees must be reduced to some extent to account for the duplication of efforts between Erickson & Oppenheimer and Martin Law Office.

Upon review of Martin Law Office's time descriptions, the court finds that 7 hours billed by Mr. De Vinney and 4.5 hours billed by a paralegal associated with Martin Law Office should be excluded because that time duplicates the efforts of Erickson & Oppenheimer or was spent reviewing Weyker's file.

**B.     The Plaintiff Is Not Entitled to Recover Fees and Costs Incurred by Martin Law Office After The Effective Date of The Offer of Judgment**

The court agrees with the defendants that the fees and costs incurred by Martin Law Office after February 19, 2015 must be excluded in accordance with Fed. R. Civ. P. 68(a) and the language of the Rule 68 offer. Martin Law Office argues that the Rule 68 offer is ambiguous as to whether it allows for the recovery of fees between the date of the offer and the date Weyker accepted it. The court sees no such ambiguity. The Rule 68 offer's statement that the plaintiff would not be able to recover fees "from this date forward"—the date of the offer, February 19, 2015—is unambiguous, and by accepting the agreement, Weyker agreed not to seek fees after that date.

The court will not exclude, however, the costs Martin Law Office had accrued but which had not actually been paid before the date of the Rule 68 offer. Accordingly, the court excludes 14.7 hours billed by Mr. De Vinney, .3 hours billed by Mr. Martin, and .2 hours billed by a paralegal after February 19, 2015, along with $4.00 in costs that Martin Law Office accrued on February 25, 2015. Dkt. No. 28-2 at 50. The court allows the remainder of Martin Law Office's costs.

**C.     Lodestar Calculation**

Based on the discussion above, the court arrives at the following lodestar calculation with regard to Martin Law Office's fee petition.

| Attorney or Timekeeper | Requested Hours or Costs | Reductions | | Awarded Hours | Awarded Rate/Hour Or Costs | Lodestar Amount |
|---|---|---|---|---|---|---|
| | | Duplicative Efforts | Rule 68(a) | | | |
| **De Vinney** | 79.8 | 7.0 | 14.7 | 58.1 | $250.00 | $14,525.00 |
| **Martin** | 4.5 | — | 0.3 | 4.2 | $250.00 | $1.050.00 |
| **Paralegal** | 26.1 | 4.5 | 0.2 | 21.4 | $150.00 | $3,210.00 |
| **Administrative** | $1,785.34 | — | $4.00 | — | $1,781.34 | $1,781.34 |
| **TOTAL** | | | | 82.7 | | $20,566.34 |

The court exercises its discretion to grant Weyker's motion for attorneys' fees in the amount of $20,566.34 as to work performed by Martin Law Office, which the court determines is a reasonable amount under the circumstances of this case, and deny the motion to the extent that it requests fees in excess of that amount.

### III. THE AMOUNT OF DAMAGES WEYKER RECOVERED DOES NOT LIMIT THE AMOUINT OF REASONABLE ATTORNEYS' FEES IN THIS CASE

The defendants argue that the fees Wyker seeks are unreasonable in light of the relatively small dollar amount of the recovery her attorneys obtained. This argument ignores the substantial non-monetary value of the result those attorneys obtained.

In <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 584-86, 106 S. Ct. 2686 (1986), the Supreme Court held that the amount of damages a plaintiff recovers is relevant to the amount of attorneys' fees to be awarded under §1988, but it does not limit the amount of attorneys' fees that can be recovered in a civil rights action. The defendants do not expressly argue that the court

should award attorneys' fees in an amount less than $30,000, but they note that Weyker's counsel, collectively, have sought over $73,000 in fees in a case that the parties settled for $30,000. The defendants argued that a reasonable amount of attorneys' fees would have been about $19,000.

The court is aware that the award of attorneys' fees in this case exceeds the amount that Weyker recovered, but the court finds that the purposes served by this civil rights case justify an award of attorneys' fees greater than the damages recovered. As the Supreme Court stated in City of Riverside:

> Congress has determined that the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff. Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards.

Id. (internal quotation marks, citation, and alteration omitted).

In this case, Weyker was arrested and charged with driving a vehicle while intoxicated, allegedly because a Milwaukee County sheriff's deputy wanted to escape blame and liability for a traffic collision—and serious injuries—that he caused after failing to stop at a stop sign and crashing into Weyker's car. After video evidence surfaced proving that the sheriff's deputy had made inaccurate statements about the collision, both as to his role in the collision and Weyker's, the criminal charges against Weyker were dismissed. But they never should have been filed in the first place.

16

Citizens have a right to expect that they will not be falsely prosecuted. Citizens have a right to expect that law enforcement officers will not make false statements to cover up their own mistakes and to escape liability for injuries they cause to citizens. The court hopes (and believes) that the result of this case will have salutary effects on the truthfulness of police officers, and the court concludes that the dollar amount of damages Weyker recovered should not mitigate the amount of reasonable attorneys' fees the court has discretion to award. After all, the fee-shifting statute is "an integral part of the remedies necessary to obtain compliance with civil rights laws." Evans v. Jeff D., 475 U.S. 717, 731, 106 S. Ct. 1531 (1986).

The court concludes that the social benefits potentially resulting from this case justify an award of attorneys' fees in excess of the damages Weyker recovered.

## IV. CONCLUSION

The court **ORDERS** that the plaintiff's motion for attorneys' fees is **GRANTED** in the total amount of $65,239.33, representing an award of $44,672.99 in attorneys' fees to Erickson & Oppenheimer, and an award of $20,566.34 in attorneys' fees to Martin Law Office. The court **ORDERS** that the

17

Case 2:14-cv-00782-PP   Filed 09/04/15   Page 17 of 18   Document 36

plaintiff's motion is **DENIED** to the extent that it requests fees in excess of that amount.

Dated in Milwaukee, Wisconsin this 4th day of September 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge